IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY TYRON ROBERTSON, )
        Petitioner, ) Civil Action No. 12-1109
)
v. ) District Judge Sean J. McLaughlin
) Magistrate Judge Susan Paradise Baxter
MR. STICKMAN, et al. )
        Respondents. )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

    **A.    Relevant Background**

Petitioner, Anthony Tyron Robertson, was charged in the Court of Common Pleas of Allegheny at **Criminal Docket No. 2008-4393** with two counts of possession with the intent to deliver a controlled substance, one count of simple possession, and one count of possession of drug paraphernalia. These charges arose from a search of a vehicle on March 1, 2008. He was also charged at **Criminal Docket No. 2009-4879** with one count of person not to possess a firearm, one count of possessing a firearm without a license, one count of possessing a small amount of marijuana, and a summary traffic offense. These charges arose from a search of his vehicle on or around November 17, 2008.

During the relevant time period, Robertson was serving time in connection with a federal judgment of sentence and was in the primary custody of the federal government.[1] Each time his presence was required before the Court of Common Pleas of Allegheny County in connection with the state charges, that court would issue a petition for a writ of habeas corpus *ad prosequendum*[2] directing his federal custodians to release him to the temporary custody of state/local officials. [ECF No. 7-3 at 8-27]. When Robertson's presence was no longer required, the state/local officials would return him to the custody of federal authorities. There is no evidence that the District Attorney of Allegheny County (or any other state or local official) ever lodged a detainer against Robertson for the charges pending against him at Criminal Docket No. 2008-4393 and No. 2009-4879.

Robertson's state trials for Criminal Docket No. 2008-4393 and No. 2009-4879 were originally scheduled in 2008 and 2009, respectively. However, they were continued numerous times for reasons that are not relevant to this action. In July of 2010, Robertson filed a motion to dismiss the charges at both docket numbers. In support, he argued that the Commonwealth had violated his rights under the Interstate Agreement on Detainers (the "IAD" or the "Agreement"), 18 U.S.C.App. 2, §§1-9. [ECF No. 7-2 at 15-19]. The IAD is an interstate compact entered into by 48 States (among them, Pennsylvania),

---

[1] The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. See Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissal of charges, or parole release. George, 463 F.App'x at 138 n.4. Custody also can expire at the end of a sentence. Id.

[2] A prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002). The receiving sovereign – in this case, the state/local government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id.

2

the federal Government, and the District of Columbia. 18 U.S.C.App. 2, § 2; 42 Pa.C.S. § 9101. It creates uniform procedures for resolving one State's pending charges against an individual imprisoned by another State. United States v. Mauro, 436 U.S. 340, 343-44, 349-53 (1978); Alabama v. Bozeman, 533 U.S. 146, 148 (2001). Article III extends to prisoners against whom a **detainer** is lodged the right to demand final disposition on the pending charges within 180 days of release to the charging jurisdiction unless good cause exists for a continuance. 18 U.S.C.App. 2, § 2, Art. III(a). Article IV gives "the jurisdiction in which an untried indictment, information, or complaint is pending" the right "to have a prisoner against whom" it "has lodged a **detainer** ... made available" for trial. Id. Art. IV(a) (emphasis added). If it secures custody of the prisoner, the State that lodged the detainer (the "receiving state") must bring the prisoner to trial within 120 days. Id. Art. IV(c). An "anti-shuttling provision" further requires the receiving state to retain custody of the prisoner until disposition of the charges. Absent a waiver, transfer of the prisoner back to the sending state results in dismissal, with prejudice, of the charges pending in the receiving state. Id. Art. IV(e). See also Mauro, 436 U.S. at 353; Bozeman, 533 U.S. at 156 (holding that the IAD commands dismissal of charges even for a one-day transgression of the anti-shuttling provision).

The Court of Common Pleas denied Robertson's motion to dismiss on August 30, 2010. [ECF No. 7-2 at 21].

According to Respondents, Robertson was released from federal custody in July of 2010. Almost two years later, in June of 2012, Robertson, who was still facing his state criminal charges, filed another motion to dismiss those charges. He reasserted the same IAD argument that he had raised in his July 2010 motion. The Commonwealth argued that his motion must be denied for lack of merit because "[e]very instance in which the Commonwealth has brought the Defendant to Allegheny County has been the result of a Writ of Habeas Corpus *Ad Prosequendum*, and a detainer has never been issued by the

3

Commonwealth under the IAD[.]" [ECF No. 7-3 at 4]. The Court of Common Pleas denied Robertson's motion on or around June 29, 2012. [ECF No. 1 at 2].

Robertson's trial at Criminal Docket No. 2009-4879 was held on July 2, 2012. The jury found him not guilty of all charges.

On September 26, 2012, a jury at Criminal Docket No. 2008-4393 found him guilty of the crimes of possession of a controlled substance and possession of drug paraphernalia. According to Respondents and the publically accessible docket for Criminal Docket No. 2008-4393, Robertson currently is awaiting sentencing for his convictions. Thus, no judgment has been issued yet in that proceeding.

In this habeas action, filed pursuant to 28 U.S.C. § 2241,[3] Robertson challenges the Common Pleas Court's August 31, 2010, and June 29, 2012, decisions to deny his motions to dismiss. [ECF No. 1 at 2]. He claims, as he did before the Court of Common Pleas, that the Commonwealth violated his rights under the IAD and, therefore, all of the charges at Criminal Docket No. 2008-4393 must be dismissed.[4] Respondents have filed their Answer [ECF No. 7] in which they contend, *inter alia*, that since no detainer was issued, the IAD was never triggered and its protections did not cover Robertson. Robertson did not file a Reply. See Local Rule 2241(D)(2) ("the petitioner may file a Reply ... within 30 days of the date the respondent files its Response.").

---

[3] A state prisoner's petition for a writ of habeas corpus is properly brought under 28 U.S.C. § 2254 when he is in custody pursuant to the *judgment* of a state court. See Coady v. Vaughn, 251 F.3d 480, 484-86 (3d Cir. 2001). When an individual is in state custody for reasons other than a judgment of a state court, a petition for a writ of habeas corpus is properly brought pursuant to 28 U.S.C. § 2241. Moore v. DeYoung, 515 F.2d 437, 441-43 (3d Cir. 1975); 1-5 R. Hertz & J. Liebman FEDERAL HABEAS PRACTICE AND PROCEDURE § 5.3 (2012).

[4] At one point in his petition, Robertson contends that he is seeking dismissal of the charges at Criminal Docket No. 2009-4879. [ECF No. 1 at 8]. However, he was acquitted of those charges before he commenced this proceeding.

B. **Discussion**

The Respondents are correct that because the Commonwealth never filed a detainer against Robertson, the IAD never became applicable and the Commonwealth was never bound by its provisions.[5] In United States v. Mauro, 436 U.S. 340 (1978), the Supreme Court held that a writ of habeas corpus *ad prosequendum* is not a detainer within the meaning of the IAD and, therefore, does not trigger the application of the IAD. It explained:

> The Agreement, in the form adopted by the United States and other member jurisdictions, sets forth the findings upon which it is based and its purpose in Art. I. It notes that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Accordingly, its purpose is to encourage the expeditious disposition of such charges and to provide cooperative procedures among member States to facilitate such disposition.
>
> - - -
>
> Congress enacted the Agreement into law and entered into it on behalf of the United States and the District of Columbia with relatively little discussion and no apparent opposition. See 116 Cong.Rec. 13997-14000, 38840-38842 (1970)…. [T]he need for the legislation was noted in both the House and Senate Reports:
>
> > "The Attorney General has advised the committee that a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing." H.R.Rep. No. 91–1018, p. 3 (1970); S.Rep. No. 91-1356, p. 3 (1970), U.S.Code Cong. & Admin.News 1970, pp. 4864, 4866.
>
> - - -
>
> The role and functioning of the *ad prosequendum* writ are rooted in history, and they bear little resemblance to the typical detainer which activates the provisions of the Agreement.

---

[5] It does not appear that Robertson exhausted his IAD claim in state court. Nevertheless, because it plainly has no merit, the Court can deny it on that basis.

5

Unlike a writ of habeas corpus *ad prosequendum* …, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving State in order to obtain the prisoner….

B.

The Agreement itself contains no definition of the word "detainer." The House and Senate Reports, however, explain that "[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." H.R.Rep. No. 91-1018, p. 2 (1970); S.Rep. No. 91-1356, p. 2 (1970); U.S.Code Cong. & Admin.News 1970, p. 4865. While the Court of Appeals for the Second Circuit concluded that this definition is broad enough to include within its scope a federal writ of habeas corpus *ad prosequendum*, the concerns expressed by the drafters of the Agreement and by the Congress that enacted it demonstrate that the word "detainer" was not so intended.

In recommending the adoption of the Agreement, the Council of State Governments outlined some of the problems caused by detainers that the Agreement was designed to address. It noted that prison administrators were "thwarted in [their] effort[s] toward rehabilitation [because t]he inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program." Council of State Governments, Suggested State Legislation Program for 1957, p. 74 (1956). Furthermore, the prisoner was often deprived of the ability to take advantage of many of the prison's programs aimed at rehabilitation, merely because there was a detainer lodged against him. This problem was noted by the Director of the Federal Bureau of Prisons, who in 1959 stated that he "remember[ed] the day when the presence of a detainer automatically guaranteed that the inmate would be held in close custody and denied training and work experiences in more relaxed situations, such as the farm, which frequently represent a valuable resource in treating prisoners and testing their progress." Bennett, The Last Full Ounce, 23 Fed.Prob. 20, 21 (June 1959). The Council of State Governments also pointed out that the existence of detainers presented problems in sentencing; when detainers had previously been filed against the defendant, the sentencing judge would hesitate to give as long a sentence as he thought might otherwise be indicated, there being a possibility that the defendant would be required to serve subsequent sentences. The Council stated that "proper sentencing, as well as proper correctional treatment, is not possible until the detainer system is modified." Council of State Governments, *supra*, at 74. Similar concerns were expressed by the Attorney General in his recommendation to Congress. See *supra*, at 1843.

The adverse effects of detainers that prompted the drafting and enactment of the Agreement are thus for the most part the consequence of the lengthy duration of detainers. Because a detainer remains lodged against a prisoner without any action being taken on it, he is denied certain privileges within the prison, and rehabilitation efforts

6

may be frustrated. For these reasons the stated purpose of the Agreement is "to encourage the *expeditious* and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Art. I (emphasis added).

    Because writs of habeas corpus *ad prosequendum* … are immediately executed, enactment of the Agreement was not necessary to achieve their expeditious disposition.… Contrary to the contention of the Court of Appeals … it is not necessary to construe "detainer" as including these writs in order to keep the United States from evading its duties under the Agreement. When the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum*, the problems that the Agreement seeks to eliminate do not arise; accordingly, the Government is in no sense circumventing the Agreement by means of the writ. We therefore conclude that a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the Agreement.

Id. at 351, 353, 358-61 (footnotes omitted, bracketed text in original).

In the recent case of United States v. Hornick, 491 F.App'x 277 (3d Cir. 2012), cert. denied No. 12-8046, 2013 WL 598823 (Feb. 16, 2013), the defendant argued, as Robertson does here, that he was entitled to dismissal of all charges against him because the government (in that case, the federal government) had violated his rights under the IAD. The Third Circuit Court of Appeals held: "[b]ecause the Government did not file a detainer, the IAD was never triggered and its protections never covered Hornick." Id. at 282. Relying upon the holding it Mauro, it explained:

    Hornick's arguments to the contrary misconstrue the reach of the IAD and muddle the distinction between detainers and writs of habeas corpus *ad prosequendum*…. The Supreme Court has emphasized that writs of habeas corpus *ad prosequendum* and detainers are distinct forms of legal process, with different purposes, histories, and effects on prisoners. United States v. Mauro, 436 U.S. 340, 357-61, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); see also [United States v.] Jones, 938 F.2d [447], 449 [3d Cir. 1991]. Having failed to introduce evidence of a federal detainer, Hornick has no IAD claim against the United States.[3]

    [3] This result aligns with the IAD's purpose to combat the detrimental effects of lingering detainers, such as interruption of prisoner rehabilitation and sentencing distortions. Mauro, 436 U.S. at 359-60, 98 S.Ct. 1834. When the United States secures custody of a detainee by means of a writ of habeas corpus ad prosequendum, "the problems that the Agreement sought to eliminate do not arise." Id. at 361, 98 S.Ct. 1834.

7

Id. at 282-83.

In conclusion, because Robertson has produced no evidence that a detainer was lodged against him in the cases at issue here, he has not demonstrated that he was covered under the IAD. Accordingly, his claim that he is entitled to habeas relief because the IAD was violated has no merit.

Based upon all of the foregoing, Robertson is not entitled to a writ of habeas corpus and his petition should be denied.

### C. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. A certificate of appealability is required in order for Robertson to appeal an Order from this Court that adopts this Report and Recommendation, since such an Order would deny relief from a "detention complained of aris[ing] out of process issued by a State Court." 28 U.S.C. § 2253(c)(1)(A). See Brian R. Means, FEDERAL HABEAS MANUAL § 12:74 (West June 2012). See also United States v. Cepero, 224 F.3d 256, 262-63, 267 (3d Cir. 2002).

AEDPA limits the issuance of a certificate of appealability to circumstances where "the applicant has made a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2)(emphasis added). Robertson's claim for habeas relief is based upon his contention that his *statutory* rights under the IAD were violated. Therefore, a certificate of appealability must be denied in this case. Marshall v. Hendricks, 307 F.3d 26, 80-81 (3d Cir. 2002) (a certificate of appealability cannot be granted on a statutory, nonconstitutional claim). See also FEDERAL HABEAS MANUAL § 12:79.

8

### **III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Robertson is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated:  March 20, 2013                     <u>/s/ Susan Paradise Baxter</u>
                                            SUSAN PARADISE BAXTER
                                            United States Magistrate Judge


cc:     The Honorable Sean J. McLaughlin
        United States District Judge